JAMES E. BELT *vs.* W. C. STETSON and another.

March 11, 1880.

Contract to furnish Goods like Sample—Failure to Perform.—Plaintiff and defendants entered into an agreement, by which the former was to furnish, and put upon a building of the latter, shutters corresponding with a particular sample, in description and quality, for a stipulated price, to be paid after full performance. Plaintiff furnished, and commenced putting up shutters of an entirely different description, which the defendants refused to accept. Thereupon, plaintiff went on and put up such shutters, with the understanding that he would thereafter so alter them as to satisfy his contract, and that defendants should not be called upon to take them and make payment until that was done. Without altering the shutters, or attempting to, he brings this action to recover their value. *Held*, that the action cannot be maintained.

Certain findings of fact considered, and *held* not justified by the evidence.

Appeal by defendants from a judgment of the municipal court of St. Paul.

*Bigelow, Flandrau & Clark*, for appellants.

*Davis, O'Brien & Wilson*, for respondent.

CORNELL, J. According to the findings of fact by the court below, the shutters, the value of which is sought to be recovered in this action, were furnished by plaintiff, and affixed to the building of defendants, which was then occupied by them,

between the 19th day of June and the 10th day of July, 1878, under a special agreement .containing a precedent condition that they should conform to a certain designated sample, in pattern, description and quality, else defendants would not be required to take and pay for them; and they were wholly unlike the sample in all respects. The correctness of the findings to this extent is conceded by both parties. It is further found that "defendants allowed the said shutters to be furnished and put upon their said building, with the full knowledge and notice of the character and quality thereof, and of the fact that they did not conform to the said pattern and sample, and have retained and used the same since they were put upon said building, and still are in the actual use and possession thereof;" and further, that the allegation in the answer, "that said shutters were not accepted by the defendants, but were rejected by them," is not proved. These findings must be taken to mean an absolute acceptance and voluntary use and retention of the shutters by defendants, after full knowledge of their defective character, notwithstanding the conditions precedent of the contract had not been performed by the plaintiff. That the court below so understood the findings is evident from its judgment allowing the plaintiff, as compensation for the shutters and his services in putting them up, what they were reasonably worth.

Defendants complain that these findings are not justified by the evidence, and that, upon the facts, proved beyond reasonable dispute, the judgment is against law. An acceptance of an article implies its voluntary receipt, with an intention to keep it. Smith on Contracts, 71, note $a$. Upon any reasonable view of the evidence, both of these facts are wanting in this case. The first opportunity defendants had to examine the shutters, they refused to receive them, because they were not .what the contract required, and they then forbade the plaintiff's employe, who had just begun to hang them, from affixing them to the building, in consequence of which he at once suspended work. The next day or so after this, Grygla,

the authorized agent who made the contract, and had the entire matter in charge, for plaintiff, had an interview with Nelson, one of the defendants, in which he was informed of their "dissatisfaction with the entire construction of the shutters," and of their refusal to accept the same. He then examined them himself, and thereupon admitted to Nelson that they were entirely different from those called for by the contract, and promised to see plaintiff about it, remarking, at the same time, "we will make them according to the contract, or we don't expect you to take them." To this Nelson replied "that he might make it satisfactory, but that defendants only wanted such shutters as they had agreed to pay for." Upon the faith of this understanding, Grygla says, "he afterwards took the responsibility of ordering Tierney (the employe) to put the shutters on, intending to make it square with Nelson by altering them afterwards." They were then put on and left, without the promised alteration, but "so hung as to be easily lifted off," without injury to the building. The matter thus remained for a few days, when plaintiff sent in a bill for the shutters at the contract price. Defendants thereupon at once responded by letter, dated July 17, 1878, as follows: "As to the fire-proof shutters, they are not what we bought, or anything near it. When we receive what we contracted for, we are ready to pay for them, and not till then. We would notify you that unless something is done to those shutters inside of ten days, we will remove them and put others in their place." Nothing was done by plaintiff during that time, but some seven days thereafter this action was brought, the shutters then remaining upon the building in the same condition they were when plaintiff's employe left them. There is no conflict in the testimony about these facts, and aside from these there is no evidence tending to show that defendants have ever waived performance of the contract, used the shutters, enjoyed any benefits therefrom, asserted any claim of ownership or right of control over them, sought to detain

them, or prevented the plaintiff from removing them if he desired.

It is evident that the case thus disclosed by the evidence shows no waiver nor acceptance by the defendants. The only consent ever given for putting the shutters upon the building was an implied one, conditioned upon the promise and understanding that they were to be altered so as fully to conform to the requirements of the contract, and that the defendants were not to take them, or to become liable therefor in any way, until that was done. The condition never having been complied with nor waived, no intention to take and keep the shutters can be inferred from the fact that the defendants suffered them, under the circumstances, to be put upon their building and to remain, nor from its continued use and occupancy by them, it not appearing that they have ever asserted any claims to the shutters, or right of control over them, by reason of such occupancy. They had a right to rely upon the promise that the shutters would be made good, as agreed, before they would be called upon to take them. So long as plaintiff allowed them to remain on the building without attempting to perform his agreement to alter them, they remained there wholly at his risk. If, by an accidental fire, both building and shutters had been destroyed, the loss as to the latter would have been his alone. Without some act denoting an intention on the part of defendants to retain the property, notwithstanding its defective character, they could be subjected to no liability or responsibility in respect thereto, nor be compelled to take what they did not want, and never had agreed to buy. No act of this kind can be inferred from any evidence in the case. The circumstance that they neglected to carry into execution, before suit, the threatened removal stated in their letter, is of no importance in this connection, for it created no new obligation, and its obvious and only purpose was to emphasize the notice the letter gave to plaintiff that they would not

accept the shutters at all, unless he complied with the terms of his contract within the time therein limited.

As, upon these facts, it does not appear that defendants have ever received any benefits under the contract, or retained the shutters from the plaintiff, the rule applicable in such a case need not be considered. The only legal question to be determined is whether plaintiff is entitled to a judgment for their value, in the absence of any proof of acceptance; it being admitted that they were furnished under a special contract, containing conditions precedent to a right of recovery, which have never been performed by him, nor waived by defendants. A negative answer to this question is too clear, upon principle and authority, to require discussion. *Smith* v. *Brady*, 17 N. Y. 173.

Judgment reversed.