## Cook *v.* State.

June 8, 1953

No. 38795         34 Adv. S. 30         65 So. 2d 277

*King & King,* for appellant.

*Geo. H. Ethridge,* Assistant Attorney General, for appellee.

KYLE, J.

The appellant, J. S. Cook, was tried and convicted in the circuit court of Holmes County on a charge of grand larceny, and was sentenced to imprisonment in the state penitentiary for a term of four years. From that judgment he prosecutes this appeal. ·

The indictment charged the appellant and Gordon Moss and Robert Lee Moss with the felonious taking, stealing and carrying away of one cow of the value of $85 in money, the personal property of H. H. Dodson. The appellant was tried separately. According to the testimony of the State's witnesses the crime charged in the indictment was committed sometime during the month of January or February 1951 and the animal alleged to have been stolen was a dark colored Pole, muley headed heifer, with a white spot on the under side of the udder.

The evidence showed that the appellant was the owner of approximately 300 acres of land situated about three miles south of the City of Durant, and was engaged in farming activities and in buying and selling cattle. H. H. Dodson was also the owner of farm lands which adjoined the lands owned by the appellant, and Dodson also owned a small herd of cattle. During the latter part of January 1951 a severe snow and ice storm swept over the central part of the State, and great damage was done to trees

and shrubs. The pasture fences were broken down by the falling branches of trees, and the cattle in the enclosures were thereby enabled to escape and roam at will on the adjoining lands. After the rain and ice storm had subsided Dodson undertook to round up his cattle and found that three cows, three heifers and one bull were missing.

About a year later Dodson learned that E. R. King, who owned a cattle farm near Greenwood, had purchased several head of cattle from the appellant during the preceding winter. Dodson made two trips to Greenwood and inspected 40 or 50 head of cattle belonging to King. Dodson found the heifer calf described above in King's pasture and identified the animal as one that he had raised. Joe Fagan, who operated a cattle sales barn near Greenwood, testified that the appellant had brought four head of cattle to his cattle sales barn near Greenwood about the time the snow and ice had begun to melt during the winter of 1951; that the appellant's wife and their small boy and a man by the name of Moss were with him; and that they came in a one and one-half or two ton truck. King purchased the four head of cattle at the sales barn, and paid about $400 for them. The dark heifer with reddish hair on her head, which Dodson identified, Fagan stated, was one of the four head of cattle that King had purchased from the appellant.

Gordon Moss, Sr., who had worked for the appellant as a sharecropper in 1951, testified that he and his son helped the appellant load the four head of cattle into the truck; that there were two yearlings, one Jersey cow, and one bull; and that he made the trip to Greenwood with the appellant when the four head of cattle were sold to E. R. King. Moss stated that he was under the impression at that time that they were Cook's cattle, but that later during the summer Cook told him that he better not say anything about the matter or he would "get into it too." Moss stated that Cook told him that the cattle were Mr. Dodson's cattle. On cross-examina-

tion Moss admitted that he was under indictment with the appellant for stealing the cattle. He also admitted that he had made a trip to Greenwood with Mr. Dodson to show him where they had taken the cattle.

At the conclusion of the State's evidence, the appellant made a motion to exclude the evidence and direct a verdict of not guilty for the reason that the State had failed to make out a case. But the court overruled the motion.

The appellant introduced an affidavit which the witness Moss had signed on February 4, 1952, in which Moss stated that he knew nothing whatever about the appellant and his wife taking cattle belonging to Dodson.

The appellant and his wife testified that the heifer yearling which Dodson claimed as his own was a calf that they had raised; that they had purchased the mother of the calf at Winona several years before. The appellant admitted that he had taken the four head of cattle to Greenwood and had sold them to E. R. King while the snow and ice were on the ground. But he stated that they were all his cattle, and he denied that he had stated to Gordon Moss that he had taken some of Dodson's cows.

The appellant's attorneys argue three points as grounds for reversal on this appeal: (1) That the court erred in overruling the appellant's demurrer to the indictment; (2) that there was a variance between the allegations of the indictment and the proof; and (3) that the evidence was insufficient to support the verdict of the jury.

■■ The demurrer alleged that the indictment was defective in that it failed to show the age, color, sex, breed or type of the animal alleged to have been stolen. There was no error in the court's action in overruling the demurrer.

In indictments for the larceny of domestic animals, it is sufficient to refer to the animal by the name commonly applied to animals of its kind without further

description. 32 Am. Jur., p. 1021, Larceny, par. 109; 17 Am. & Eng., Note p. 736, and cases cited.

In the case of Jones v. State, 51 Miss. 718, the Court held that an indictment charging the larceny of "one mule, the property of William Adkins, of the value of $100," and "one mule of the value of $100, of the personal property of Lem B. Sides," was sufficient.

The appellant's chief contention on this appeal, however, is that there was a variance between the allegations of the indictment and the proof and that the court should have sustained the motion made by the appellant at the conclusion of the testimony of the State's witnesses to exclude the evidence and direct a verdict of not guilty for that reason, although the appellant admits that he assigned no such reason for the motion at the time the motion was made.

The appellant relies upon the case of Moran v. State, 160 Miss. 598, 135 So. 209, to support his contention that there was a variance between the charge laid in the indictment and the proof. In the Moran case, the indictment charged that the defendant had stolen "a yellow pied yearling." The proof showed the loss of a 4-year old cow weighing 700 pounds. The Court in its opinion said that the word "yearling" meant a young animal past its first year and not yet two years old, and that certainly an animal four years old weighing 700 pounds did not meet that description. And the Court held that, since the indictment charged the larceny of "a yellow pied yearling," it was necessary for the State to prove that the defendant had taken and carried away "a yellow pied yearling"; and this the State had failed to do. It can be readily seen that the Moran case is clearly distinguishable from the case that we have here.

The animal that Cook carried to Greenwood and sold to E. R. King in January or February, 1951, and that Dodson identified as one of the seven head of cattle that he had lost during the snow and ice storm, was a dark

colored muley headed heifer, with a white spot on the under side of the udder. The heifer was 7, 8, 9 or 10 months old—"She was a pretty good size cow"—when she disappeared during the winter of 1951, and was a year older when Dodson found her in E. R. King's pasture. The animal was referred to by the witnesses as a calf, a heifer and a cow.

As a matter of fact, as well as in law, no hard and fast line of demarkation can be drawn between a cow, a heifer and a female calf. The general tendency among the courts is to treat the word "cow" as including an immature female of domestic cattle and of other bovine ruminants. Marsh v. State, 3 Ala. App. 80, 57 So. 387; Mathis et al. v. State, 70 Fla. 194, 69 So. 697, 698. In the case of State v. Minnick, 54 Or. 86, 102 p. 605, the Court said: "Had the indictment in this case charged the defendant with stealing a cow, we have no doubt that a heifer, being a young cow, and therefore within that class of animals, would come within the terms of the indictment, on the theory that the greater includes the less."

In 52 C.J.S., p. 910, Larceny, par. 96, the text-writer says: "Under an indictment charging the theft of a 'cow' it is not a variance if the proof shows the theft of a 'heifer'; but it is a variance if the proof shows the stolen animal to have been a steer or bull."

In the case of Garvin v. State, 52 Miss. 207, this Court held that where the indictment charged the accused with stealing a "heifer," and the jury found him guilty and fixed the value of the "cow" at $27.50, the verdict was sufficient. The Court said: "There was no variance in this. A heifer is defined to be a young cow."

In the case of People v. Soto, 49 Cal. 67, the defendant was indicted for stealing a cow, and the proof showed that the animal alleged to have been stolen was a heifer almost one and one-half years old. It was contended that this was a fatal variance between the indictment and the proof. But the Court said that "it is evident, we think,

that in making it a felony to steal a cow, the legislature intended to include under that designation a heifer also, which is but a young cow."

In the case of Parker v. State, 39 Ala. 365, the accused was indicted for the larceny of "a cow, the personal property of Thomas Rowan," which was alleged to be of the value of $20. During the trial the State proved that the animal stolen was a heifer, between two and three years old, and had never had a calf. The defendant requested that the court charge the jury that "if the animal stolen was a heifer, between two and three years old, that had never had a calf, then there was such a variance between the charge in the indictment and the proof that they could not convict the defendant under said indictment . . ." The court refused to grant the charge. The Supreme Court on appeal said: "There is nothing in the objection that the property was misdescribed." In the later case of Marsh v. State, supra, the Alabama Court of Appeals said: "The truth is that a cow is a female of bovine animals. In its most common acceptation, it is a mature female of such animals, but the general tendency among the courts is to treat the word 'cow' as including an immature female of such species, and for that reason our Supreme Court has held that a 'heifer' is a cow. Parker v. State, 39 Ala. 365."

In the case of State v. Crow, 107 Mo. 341, 17 S.W. 745, the Court held that proof of the theft of "a heifer" under an indictment charging the larceny of "a cow" was not a fatal variance, when the trial court did not find it prejudicial to the defendant or material to his defense.

■■■ We think that under the authorities cited above there was no real variance between the indictment and the proof in the case that we have here; and there was no error in the action of the lower court in overruling the appellant's motion for a directed verdict.

It is next argued that the court erred in permitting the State to introduce evidence to show that there were

several cows missing from Dodson's herd after the freeze. But we think that it was competent for the State to show the circumstances under which the cattle escaped from the owner's pasture. The appellant was not charged with stealing the other animals, and no attempt was made to prove that the appellant had stolen any of the other animals. Dodson practically admitted that he could not identify any of the other cattle found in E. R. King's pasture as his own, and it cannot be said that Dodson's testimony on that point was prejudicial to the appellant.

Finally, it is argued that the court erred in refusing to grant the peremptory instruction requested by the defendant instructing the jury to find the defendant not guilty. But we think that there was no error in the court's refusal to grant the peremptory instruction, and that the evidence was sufficient to justify the verdict of the jury.

The judgment of the lower court is therefore affirmed. Affirmed.

*McGehee, C. J.,* and *Lee, Arrington* and *Ethridge, JJ.,* concur.